NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3462
_____

LLOYD MCDONNAUGH,

Appellant

v.

TEVA SPECIALTY PHARMACEUTICALS, LLC,
Also known as TEVA USA,
Also known as TEVA PHARMACEUTICAL INDUSTRIES, LTD.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-05566)
District Judge:  The Honorable Mitchell S. Goldberg

Submitted Under Third Circuit L.A.R. 34.1(a)
June 5, 2012

BEFORE:  SCIRICA, GREENAWAY, Jr., and NYGAARD, *Circuit Judges*

(Filed: July 26, 2012 )

_____

OPINION OF THE COURT
_____

NYGAARD, *Circuit Judge*

Lloyd McDonnaugh appeals the District Court's grant of summary judgment in favor of Teva Specialty Pharmaceuticals, Inc. McDonnaugh asserts that the District Court erred by deciding that McDonnaugh failed to make a prima facie case of employment discrimination based on his race, and in the alternative, failed to adduce evidence from which a fact-finder could reasonably conclude that the explanation offered by Teva for his dismissal was pretextual. Additionally, he asserts that the District Court erred by concluding that McDonnaugh failed to properly support his claim that Teva treated comparable non-protected employees differently. We will affirm.

Since we write solely for the parties who are already familiar with this case, we will only briefly review the undisputed facts. Teva hired McDonnaugh, an African American, in August 2006 as a sales representative. He had six years experience in pharmaceutical sales. Primarily, he was responsible for selling two asthma treatment products, making sales calls principally on physicians and pharmacists.

McDonnaugh's supervisor, also African American, rated his job performance in 2006 as "meets expectations." In 2007, however, the supervisor reduced his overall rating to "mostly meets expectations." The supervisor had concerns about, *inter alia*, McDonnaugh's sales skills, product knowledge and territory management.

Teva moved McDonnaugh's original supervisor to another position. The new supervisor, Jaylene Penrod, is Caucasian. She issued a set of expectations for the sales representatives she supervised and accompanied them on sales calls. After accompanying McDonnaugh, Penrod noted concerns about a sales style that did not present a clear, concise message. She wrote multiple coaching guides in subsequent

months, consistently rating his selling skills as below expectations, or, mostly meets expectations. Throughout this time, his sales results were below regional and national averages.

McDonnaugh complained to others that Penrod spoke to him in a dehumanizing way and he disagreed with her criticism. He also complained that Penrod's mid-year review was inconsistent with the coaching guides. The review contained ratings in some areas that were lower than the guides.

Penrod had her own supervisor and a senior sales representative accompany McDonnaugh on sales calls and they, too, were critical of his sales skills. Penrod did, over time, raise McDonnaugh's rating in some areas of his performance, but her evaluation of his sales skills remained below average. Teva placed McDonnaugh on a performance management plan in November 2008, an action intended to both put McDonnaugh on notice that he could be terminated if his job performance did not improve, and also to highlight specific areas that needed improvement. Penrod rated McDonnaugh's performance as "below expectations" in his year-end review.

Penrod accompanied McDonnaugh on sales calls in January 2009. On that day he called upon a physician who had moved months prior, and he was unable to see two other physicians because he had not made appointments. Penrod concluded after this that McDonnaugh was not going to raise his performance to acceptable levels. Penrod and her supervisor met with McDonnaugh on January 23, 2009 and terminated him. Teva hired a Caucasian male to replace McDonnaugh.

McDonnaugh first asserts that the District Court erred by concluding that he had not met his evidentiary burden of showing a prima facie case. McDonnaugh belongs to a protected class, had prior experience in pharmaceutical sales, and was replaced by a Caucasian male. Teva replacing McDonnaugh with a Caucasian male is sufficient (along with the other evidence) to meet the prima facie burden of showing that the employment action occurred in circumstances that "give rise to an inference of unlawful discrimination." *Anderson v. Wachovia Mortgage Corp.,* 621 F.3d 261, 274 (3d Cir. 2010) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The District Court erred.

Nonetheless, McDonnaugh failed to meet the shifting burden under *McDonnell Douglas* of adducing evidence sufficient for a fact-finder to conclude that Teva's employment action against him was pretextual. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973). There is no dispute that, starting in 2007 before Penrod supervised him, McDonnaugh never met the company's performance expectations in the area of sales skills, a skill that all agree was central to his job. We are aware that, from 2007 through 2009, evaluation of other metrics of his performance varied between ratings of "meets expectations" and "mostly meets expectations." We also take note that McDonnaugh's sales statistics fluctuated, and that there was occasional improvement in this regard. Yet, we do not accept McDonnaugh's general argument that these other ratings, or their movement, provide evidence of pretext. It is within the employer's domain and discretion to determine both the skills sets, and the level of competence necessary to fulfill the requirements of a particular position of employment. Where, as

4

here, an employee consistently under-performs in a skill-set fairly designated as critical to his job, the employee cannot preclude summary judgment on the issue of pretext merely by showing better or satisfactory performance in other skill-sets.

Nor does McDonnaugh's termination after Teva issued a performance management plan undermine its proffered reason for the action. By giving him this plan, Teva indicated its intent to intensely monitor him on the job for a defined period of time. However, there is no evidence that, by issuing a performance management plan, Teva placed itself under an obligation to continue his employment through the end of the period—particularly where substandard conduct showed no improvement.

Finally, regarding the comparators that McDonnaugh presented, the District Court correctly decided that they were not similarly situated. Although they had the same supervisor, and also had performance issues, one of the comparators had significantly less experience in pharmaceutical sales, but showed improvement over time. The other employee had performance problems in areas different from McDonnaugh, and also showed improvement. Such differences support a conclusion that these employees were not similarly situated to McDonnaugh. Thus, they are not proper comparators.

For all of these reasons, we will affirm the order of the District Court.